## FIRST NATIONAL BANK OF HILLSBORO v. A. STEENSON,
### as Treasurer of Traill County.

**National banking association — taxes — personal — capital stock — shares — assessment.**

    1. Sections 24–26, 39 and 44, of chapter 132, Laws of 1890, considered and construed.

    *Held*, under said statutes that a national banking association is neither authorized nor required to pay a personal tax on its shares of capital stock which has been assessed against the individual owners of such shares.

**Taxes — collection — distraint — taxing officers — concurrent action — equity — action — real party in interest.**

    2. Where such taxes remain unpaid, and it is alleged that the county treasurer is about to distrain the goods and chattels of the individual owners of such shares, and sell the same in satisfaction of said taxes; and where it is further alleged that, *by reason of the concurrent action of the taxing officers,* said shares of stock were illegally and purposely overassessed and unequally assessed,—*held,* that an action in equity will not lie in behalf of the bank whose shares of stock have been so assessed to restrain the collection of said tax.

---

    Note.—The authorities on the question of state taxation of shares of stock in national banks are collated in notes in 45 L.R.A. 743, 3 L.R.A. (N.S.) 584; and 7 L. ed. U. S. 939.

Under said statute the bank is not the real party in interest.    Cummings v.
Merchants' Nat. Bank, 113 U. S. 153, 25 L. ed. 903, distinguished.

**Courts — equity — personal taxes — collection — restraint — assessments —
· remedies — individual taxpayer.**

3. *Held* further, that resort cannot be had to a court of equity to restrain the
collection of a personal tax alleged to be illegal in part by reason ot an inten-
tional overassessment and unequal assessment, in a case where the taxpayer
has neglected to avail himself of the statutory remedies especially provided
for such an abuse of authority on the part of the taxing officials.


Opinion filed November 28, 1898.


Defendant appeals from a judgment of the District Court for Traill
County, *Charles A. Pollock,* Judge.

*P. G. Swenson,* for appellant.

*Carmody & Leslie,* for respondent.


WALLIN, J.    This action was brought to restrain the defendant, as
county treasurer of Traill county, from seizing and selling in satisfac-
tion of certain taxes alleged to be illegal in part, the goods and chattels
of certain persons named in the complaint, which persons it is alleged
are severally the owners of divers shares of the capital stock of the
plaintiff, and who collectively own, as it is alleged, all of the plaintiff's
capital stock.

The taxes involved were assessed, equalized, and levied in the year
1895 by the taxing officials of the city of Hillsboro in Traill county,
in which the plaintiff's bank is located, and by the officials of the county
of Traill.

The action was commenced in December, 1896, and soon after its
commencement a temporary restraining order was made by the district
court, restraining the defendant from taking any steps whatever to col-
lect any of the taxes in question; and after a trial of the action upon
the merits the district court entered its judgment in favor of the plain-
tiff, and therein adjudged that said defendant be permanently re-
strained and enjoined from collecting—either from the plaintiff or
from any of its said shareholders—any of the said taxes of 1895,
except a certain part or percentage thereof which the district court de-

termined were valid and collectible taxes. From this judgment the defendant has appealed, and demands a trial anew in this court.

The substance of the plaintiff's cause of action, as set out in its complaint, when stated in general terms, is as follows: The plaintiff charges in substance that the several taxing officials of the city of Hillsboro and of the county of Traill, and particularly the city assessor of said city and the board of equalization of said county, did, in assessing and equalizing the taxes in said city and county for the year 1895, intentionally and illegally discriminate against said shareholders, and as against the property represented by said shares of capital stock; and to accomplish such discrimination it is charged that the valuation placed on said shares of stock by said assessor, and as equalized by said board of equalization, was relatively too high, and was much greater than the valuation placed upon other moneyed capital and personal property within said city and county.

The trial court sustains these allegations of the complaint in its findings of fact, wherein the court uses the following language: "The assessor of the city of Hillsboro, in making up the assessment roll for his city in the year 1895, did assess the holders of the several shares of stock composing the capital stock of said First National Bank, the plaintiff, at 81 per cent of its full cash value; and did assess other moneyed capital owned by individuals in said city of Hillsboro, subject to taxation, at only 35 per cent of its full cash value and did assess other personal property in the city of Hillsboro at 25 per cent of its actual cash value, and that said discrimination or rules of said assessment used by said assessor of the city of Hillsboro were wilful; and the assessor of the city of Hillsboro intended in each of said cases to assess said several classes of property at the percentage of their actual value as given above." The court finds that the city board of review did not change any of the said valuations as made by the city assessor, and further finds: "That the board of equalization of the said county of Traill, pretending to equalize the assessment rolls for the county of Traill, as they were authorized by law to do, did on the 12th day of July, 1895, by vote or resolution by them passed, place the assessed value of said shares of stock of the said plaintiff at 80 per cent of its full value, but did not raise the assessed valuation of other personal property in like proportion, or at all, so that the capital stock of said bank was assessed

to the holders thereof at the sum of 80 per cent of its full cash value, while other moneyed capital in said county was assessed at only 50 and 60 per cent of its full cash value within said city of Hillsboro; while other personal property within said city was left at an assessment of only 25 per cent and 33⅓ per cent of its full cash value." The court further finds that the action of the said county board of equalization in making said assessment of the capital stock of said plaintiff "was wilful, and for the purpose of procuring the taxation of the stock of banking corporations at a higher rate than other personal property and moneyed capital in said county of Traill, in violation of § 176 of the Constitution of North Dakota, and in violation of the national banking act." The court further finds that, before the commencement of this action, the plaintiff tendered the amount of said tax which was justly due, computed upon the same basis as taxes levied upon other moneyed capital and personal property in said city of Hillsboro, and that said offer was refused.

These findings of fact are challenged by exceptions thereto upon the ground that the same are unsupported by the evidence; but inasmuch as our disposition of the case will be controlled by other considerations, we have not found it necessary to consider the evidence or pass upon the exceptions to the findings of fact.

Passing to a consideration of the legal aspects of the questions presented by this record, and proceeding upon the assumption that all the facts stated in the complaint are true and sustained by the evidence, the question arises whether such facts constitute a cause of action in equity in favor of this plaintiff. It has been seen that the taxes in question were not assessed against the plaintiff, nor is it alleged that plaintiff was ever requested to pay the same or any part of the same, and much less is it alleged or claimed that the defendant, as county treasurer, or otherwise, has ever threatened to seize or sell any of the property of the bank as a means of satisfying any of said taxes; but, on the contrary, it is expressly alleged "that the treasurer of said county, defendant herein, threatens and is about to distrain the property of the shareholders of plaintiff's capital stock." Nor does it appear that the shareholders of plaintiff's capital stock, who are personally liable to pay the tax, have ever requested the plaintiff to interfere in their behalf, or that they now desire this action to be prosecuted.

Upon this state of facts we confess our inability to understand the legal theory upon which this plaintiff can ask for or receive the aid of a court of equity. The taxes in question were assessed and levied in the year 1895, and are therefore governed by §§ 24, 25, and 26 of chapter 132 of the Laws of 1890. Under § 24 the shares were properly assessed to their owners respectively as individuals. Nor does § 26, supra, make the plaintiff or its property liable to pay such assessment in any contingency whatever. Nor does it in any way appear to this court that there is any liability, direct or contingent, upon the part of the plaintiff to pay said taxes or any part of the same. Wherein, therefore, is the plaintiff injured by the threatened seizure of the personal goods of others? Adverting to the statute under which the county treasurer can distrain personal property as a tax collector, we discover that that officer is empowered to seize and distrain in satisfaction of a personal property tax "goods and chattels belonging to the person charged with such taxes." See § 55, chapter 132, Laws of 1890, amended § 5, chapter 100, Laws 1891. The treasurer, under this authority, would be powerless to seize property belonging to the plaintiff, and, as has been said, no such seizure is alleged to have been threatened or contemplated.

If in any case the writ of injunction may be invoked to restrain the collection of a personal tax by the seizure of goods and chattels, it is needless to say that it cannot be invoked by a party whose property is not in any danger of seizure; nor by a party against whom no tax has been assessed and from whom no payment of taxes has been or can be lawfully demanded by the tax collector. Counsel for respondent cites the case of Cummings v. Merchants Nat. Bank, 101 U. S. 153, 25 L. ed. 903, as sustaining his contention that an injunction will be granted at the suit of a national bank to restrain the collection of an illegal tax levied against its stockholders on their shares of its capital stock. That case originated in the circuit court of the United States, and its decision involved a construction of the revenue laws of the state of Ohio. In the case cited the Supreme Court sustained the remedy by injunction on two grounds: First, upon the ground that under the Ohio statute the bank itself was expressly authorized to·pay the tax upon its shares, and was allowed to indemnify itself for such payments

in the different ways pointed out in the Ohio statute; secondly, the remedy was sustained upon the ground that the statutes of Ohio (in addition to certain legal remedies) allowed the taxpayer in terms to resort to the remedy by injunction in such cases. The court in its opinion further noticed the fact that the remedy of paying the illegal tax, and suing at law to recover it back, would be inadequate in view of the peculiar fiduciary duties imposed upon the bank by the statutes of that state.

None of these grounds or reasons for the interference of a court of equity exist in this state. As we have seen the statute of 1890, chapter 132, §§ 24–26, unlike § 1184, Rev. Codes 1895, neither authorizes nor requires the bank to pay the taxes assessed against its shareholders; nor is there any statute authorizing the use of an injunction in this class of cases in this state.

Another consideration, in our opinion, is equally decisive of this case. It is not claimed that the plaintiff, or any of its said shareholders, ever presented their grievances arising upon the alleged unequal and over-valuation of said shares of capital stock, to either the board of review of the city of Hillsboro, or the board of equalization of Traill county, or to the state auditor, all of which officers are expressly empowered by the revenue laws of this state to hear and redress grievances of the character set out in this complaint. See Sess. Laws 1890, chap. 132, §§ 39 and 44; also Sess. Laws 1891, chap. 100, § 11.

While there is some conflict of authority upon the question it is nevertheless settled by the great preponderance of cases that the writ of injunction will be denied to restrain the sale of personal property in satisfaction of an illegal personal tax in a case where the taxpayer has neglected to avail himself of the statutory method of correcting the abuse of an unequal or overvaluation. O'Neal v. Virginia & M. Bridge Co. 18 Md. 1, 79 Am. Dec. 669; Johnson County v. Searight Cattle Co. 3 Wyo. 777, 31 Pac. 268; Smith v. Marshalltown, 86 Iowa, 516, 53 N. W. 286; New York & C. Grain & Stock Exch. v. Gleason, 121 Ill. 502, 13 N. E. 204; Meyer v. Rosenblatt, 78 Mo. 495; Breeze v. Haley, 10 Colo. 5, 13 Pac. 913. In the case of Humphreys v. Nelson, 115 Ill. 45, 4 N. E. 637, the court fully sustains this rule, and in its opinion, page 51, says: "Having abundant remedy at law for the correction of the errors by which it claims to have sustained injury, and

having neglected to resort to that remedy, it cannot now have relief in a court of equity," citing Adsit v. Lieb, 76 Ill. 198; also People v. Big Muddy Iron Co. 89 Ill. 116. See 25 Am. & Eng. Enc. Law, page 452, and cases cited in note 3.

Upon the authorities cited it will follow that a court of equity will not enjoin the collection of the taxes in question, and the judgment entered in the District Court restraining their collection is therefore erroneous, and must be reversed, and a judgment entered below dismissing this action. It will be so ordered.

All the judges concurring.

(This case should have been reported in one of the earlier volumes, but was, through the inadvertence of the printer, mislaid and omitted.)